UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR MOORE,

    Petitioner,

                                                    CASE NO. 2:08-CV-10767
v.                                     HONORABLE VICTORIA A. ROBERTS
                                                  UNITED STATES DISTRICT JUDGE

MARY BERGHUIS,

    Respondent.

_____/

## OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Arthur Moore, ("Petitioner"), confined at the Kinross Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his Oakland Circuit Court no contest plea convictions for ten counts of first-degree criminal sexual conduct, MICH. COMP. LAWS 750.520B, one count of first-degree home invasion, MICH. COMP. LAWS 750.110a(2), one count of breaking and entering with intent to commit larceny, MICH. COMP. LAWS 750.110, and one count of failing to register as a sex offender. MICH. COMP. LAWS 28.729. Petitioner was sentenced as a fourth time habitual felony offender to a controlling sentence of 45-to-90 years in prison. For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

## I. Background

Petitioner's convictions resulted from his sexual assault of two individuals. In one incident, Petitioner broke into a woman's home at night and raped her in her bed. In a separate occurrence, Petitioner abducted a girl as she was walking to school and raped her. Petitioner's identity as the perpetrator of these crimes was established through DNA evidence. Additionally, the schoolgirl was able to identify Petitioner in a photograph identification procedure. At the time of these offenses, Petitioner had failed to register as a sex offender as required by Michigan's sex offender registry law.

On August 10, 2005, the parties appeared before the trial court and indicated that they had reached a plea agreement. The prosecutor indicated that, in the case involving the girl who was abducted walking to school, Petitioner would plead no-contest to all of the charges against him and that the factual basis for the plea would be made out by reference to the victim's testimony at the preliminary examination as well as a subsequent Department of State Police Laboratory Report indicating that semen found in her panties belonged to Petitioner. In the case involving the woman who was raped in her bed, the prosecutor likewise indicated that Petitioner would plead no contest to all charges, and that the parties would stipulate to the use of the victim's preliminary examination testimony as well as the Department of State Police Laboratory report indicating that the material found on the vaginal swab belonged to Petitioner. The prosecutor indicated that Petitioner would also plead guilty for failure to register as a sex offender, as well as to being a fourth time habitual felony offender.

The trial court stated to Petitioner's counsel that "your understanding is that the Court will stay at the low end of the guidelines. Lower end meaning the lower half of the range." Plea Tr. at 6. Trial counsel for Petitioner replied, "Correct." Id.

The trial court then placed Petitioner under oath and conducted the following colloquy:

> THE COURT: You understand you are pleading guilty to failing to register as a sex offender, under which I could sentence you to four years in prison, to an habitual off--offender fourth under which I could sentence you up to --is it life on that one?
>
> MS. BROWN: [Prosecutor] Fifteen years, Judge.
>
> THE COURT: Oh, 15 years. You're also pleading no contest in case number 04-196465, to five counts of criminal sexual conduct in the first degree, under each of which I could--I could sentence you up to life. You're also pleading no contest to count six, breaking an entering a building with the intent to commit larceny, under which I would sentence you to six--or strike that 10 years in prison. You're pleading guilty to an habitual offender
> fourth that's attached to that, under which I could sentence you to life. In case number 05-201119-FC, you're pleading no contest to criminal sexual conduct in the first degree. Actually, to--five counts of criminal sexual conduct in the first degree, under each of which I could sentence you up to you life (sic). And, to an habitual offender under which I could sentence you up to life.
>
> MR. MOORE: Yes, sir.
>
> THE COURT: You understand there's no plea bargain here with the People; they have you under this plea?
>
> MR. MOORE: Yes, sir.
>
> THE COURT: I have indicated to your attorney and now to you that I will sentence you at the lower end of the sentencing guidelines. Meaning the lower half of the range that I calculate at the time of the sentencing. Right now, we think that's 25 to 75 years. Do you understand that?

3

> MR. MOORE: Yes, sir.
>
> THE COURT: You have a right to challenge those--that range. Your attorney does have some issues with them, but that will be placed on the record at the time of sentencing with your attorney's right to address the legal merits or demerits of each of those at the time of sentencing. Do you understand that?
>
> MR. MOORE: Yes, sir.
>
> THE COURT: Do you understand as long as I follow that agreement you waive any right of appeal?
>
> MR. MOORE: Yes, sir.
>
> THE COURT: If I don't follow that agreement, you understand you have a legal right to withdraw your plea and have a trial?
>
> MR. MOORE: Yes, sir.

Plea Tr. at 9-11.

The trial court then went through each of the constitutional and statutory rights associated with a trial that Petitioner would give up by pleading no-contest to the charges against him. Petitioner stated that he understood those rights and was willing to give them up. Petitioner denied that anyone had promised him anything that was not placed on the record. The prosecutor and defense attorney likewise indicated that there were no promises made other than those stated on the record. The trial court found that the plea was freely and voluntarily entered.

At the sentencing hearing, the trial court calculated the guidelines as setting a minimum sentence between 270 months (22 ½ years) and 900 months (75 years). The trial court stated that it had indicated at the time of the plea that it would impose a sentence within

4

the lower half of the range provided by the sentencing guidelines. Petitioner's trial counsel then stated that it was his and Petitioner's understanding that the trial court had promised to sentence Petitioner within "the lower one-third" of the range provided by the sentencing guidelines. Sent. Tr. at 9, 11. On this basis, Petitioner moved to withdraw the plea.

> After a sidebar at the request of the defense, the trial court stated the following:
>
> At the sidebar we had [a] discussion. It was your request to come up here. And then after the discussion or during that discussion, I indicated to you that there was an honest difference of opinion. I thought by reviewing the transcript itself which this Court reviewed the video and said that that [sic] the understanding of the video is that the Court had arranged the half-way range between the guidelines as scored even at the time the *Cobbs* Agreement was entered into. And Ms -- I say [sic] the tape; I saw my notes, and Ms. Brown [the prosecutor] said it was in her notes as well. Your notes happened to say one-third and you say your believes [sic] one-third well, that's you and your client are talking about one-third, okay. I happen to believe it's one half. I'm proceeding on the original agreement of August 10th which is that this Court is staying within the *Cobbs* Agreement.

Sent. Tr. at 12.

The trial court imposed sentences of 45-to-90 years for each of Petitioner's first-degree criminal sexual conduct and the first-degree home invasion convictions, and 3-to-15 years for the conviction for failure to register as a sex offender.

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals raising two claims:

> I. Since Mr. Moore did not fully understand the nature of his pleas, and both he and his defense counsel misinterpreted the trial court's preliminary sentence evaluation, the trial judge abused his discretion when he denied Mr. Moore's motion to withdraw his pleas contrary to federal and state constitutions.
>
> II. Since the trial judge sentenced Mr. Moore based on inaccurately scored

sentencing guidelines, specifically PRV 6, where there was insufficient proof that Mr. Moore was on probation when his offenses occurred, this court must remand for resentencing since Mr. Moore's sentence was imposed in violation of the federal and state constitutions, and increased his potential sentence pursuant to the trial judge's preliminary sentence evaluation.

The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal "for lack of merit in the grounds presented." *People v. Moore,* No. 272954 (Mich. Ct. App. Oct. 20, 2006).

Petitioner filed an application for leave to appeal from this order in the Michigan Supreme Court and raised the same two claims he presented to the Michigan Court of Appeals. The application for leave to appeal was denied because the Michigan Supreme Court was "not persuaded that the questions presented should be reviewed by this Court." *People v. Moore*, No. 132772 (Mich. Sup. Ct. March 26, 2007).

Petitioner now seeks a writ of habeas corpus based on the two claims he presented to the state courts during his direct appeal.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)　resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

### A. Involuntary Plea Claim.

Petitioner first claims that the trial court erred in denying his motion to withdraw his plea, when it acknowledged that Petitioner and his counsel honestly but mistakenly believed that Petitioner would receive a minimum sentence that was no greater than one-third of the calculated guideline range. Specifically, the guideline range of 270-to-900 months computed by the trial court has a midpoint of 48.75 years and a one-third point of 40 years.[1]

---

[1] (900 mos. - 270 mos.)/2 + 270mos. = 585 mos. or 48.75 years. (900 mos. - 270 mos.)/3 + 270 mos. = 480 mos. or 40 years.

The trial court sentenced Petitioner to a minimum term of 45 years, which is greater than the one-third point but less than the midpoint.

When a petitioner is convicted as a result of a plea, habeas review is limited to whether the plea was made voluntarily, intelligently, and knowingly. *See United States v. Broce*, 488 U.S. 563 (1989); *Boykin v. Alabama*, 395 U.S. 238 (1969). A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id*. at 749. The plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id*. at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id*. at 748.

In this case, the state court record reveals that Petitioner's plea was knowing and voluntary. Petitioner indicated at the plea hearing that he was 29 years old, that he could read and write, and that he understood the advice his attorney gave him. The trial court informed Petitioner of the charges against him, and it informed him of all of the rights that he waived by pleading no-contest. Petitioner was informed of the consequences of his plea - including the fact that he would be entitled to withdraw his plea only if his minimum sentence exceeded the midpoint of the guideline range. Petitioner denied that he was coerced or intimidated by his attorney, the court, or anyone else to plead no-contest.

Petitioner was represented by counsel and, conferred with counsel during the plea process.

Petitioner's assertion that his plea was not knowing and voluntary because he and his counsel believed that his minimum sentence would be no greater than one-third of the guideline range, is belied by the record and forecloses relief. As aptly stated by the United States Court of Appeals for the Sixth Circuit when faced with a challenge to a plea bargain based upon an off-the-record misunderstanding:

> If we were to rely on [the petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before us. "Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."

*Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (*quoting Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)).

Even if it is accepted that Petitioner and his counsel were mistaken as to the sentence he would receive, a trial court's proper plea colloquy cures any misunderstandings that a defendant may have about the consequences of a plea. *See Id.*, 170 F.3d at 565; *see also Boyd v. Yukins*, 99 Fed. Appx. 699, 703 (6th Cir. 2004). The record shows that the trial court properly informed Petitioner about the sentencing consequences of his plea and that the court would impose a minimum sentence that was no higher than the midpoint of the guideline range. The court twice stated that the minimum sentence would not exceed the midpoint: once to defense counsel, and once to Petitioner himself. Plea Tr. at 6, 11. At no

9

point in the plea proceeding did Petitioner or his attorney indicate a different understanding. The court made no further promises to Petitioner at the time of the plea. The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. Habeas relief is not warranted.

### A. <u>Sentencing Claim</u>.

Petitioner next claims that he was sentenced based on inaccurate information, because his sentencing guidelines were scored to reflect the fact that he was on probation at the time of the instant offenses. Petitioner contends that before he committed the instant offenses he had already violated the terms of his probation and was sentenced to serve 90 days in jail. A sentence violates due process when it is based upon extensive and materially false information which the prisoner had no opportunity to correct prior to being sentenced. *Draughn v. Jabe*, 803 F.Supp. 70, 80 (E.D. Mich. 1992), aff'd, 989 F.2d 499 (6th Cir. 1993)(*citing Townsend v. Burke*, 334 U.S. 736, 741 (1948)). A sentence must be set aside where "the defendant can demonstrate that false information formed part of the basis for the sentence. *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988).

Further, the Supreme Court has long upheld the philosophy that, in sentencing a defendant, "'the punishment should fit the offender and not merely the crime.'" *Roberts v. United States*, 445 U.S. 552, 556(1980)(*quoting Williams v. New York*, 337 U.S. 241, 247 (1949)). The Court reaffirmed the "'fundamental sentencing principle' that 'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of

information he may consider, or the source from which it came.'" *Id.* (*quoting Williams*, 337 U.S. at 250). The Court, however, holds that a sentence imposed on the basis of "'misinformation of constitutional magnitude'" violates due process. *Id.*(*quoting United States v. Tucker*, 404 U.S. 443, 447 (1972)).

Here, while Petitioner disagrees with the state court's assessment and calculation of the prior record variable, he has not demonstrated that the state court's calculations were based upon inaccurate information. Therefore, Petitioner was not sentenced on the basis of "extensively and materially false" information, which he had no opportunity to correct. *Townsend*, 334 U.S. at 741.

Prior record variable 6 (PRV 6) accounts for the relationship Petitioner had to the criminal justice system at the time he committed the offense in this case. MICH. COMP. LAWS § 777.56. The trial court scored PRV 6 based upon information in the pre-sentence report that indicated Petitioner was on probation at the time he committed the instant offenses. At the sentencing hearing the prosecutor asserted that Petitioner was given a 6-month term of probation on February 4, 2004. Sent Tr. at 5. The instant offenses occurred in March and April of 2004. When defense counsel asserted that Petitioner claimed that he had already been violated and sentenced on his probation violation before these offenses, the probation officer noted that the docket sheet indicated that Petitioner was not sentenced on the violation until May 2004. Sent Tr. at 8. The prosecutor indicated that the probation violations, were in fact, a result of the instant offenses. Sent Tr. at 7. While the pre-sentence report may not be definitive relative to the relationship between Petitioner's

discharge from probation and the date of the offense, it is the job of the state court, not a federal habeas court, to resolve such ambiguities. *See, e.g., Tucker v. Palmer*, 541 F.3d 652, 661 (6th Cir. 2008). Petitioner cannot establish that the trial court relied upon materially false or inaccurate information in imposing his sentence. Habeas relief is not warranted.

### IV. <u>Conclusion</u>

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

The Court denies Petitioner a Certificate of Appealability because he failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable, or that he should

receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)). While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claim, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V. ORDER

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED,** **and** a Certificate of Appealability is **DENIED.** Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: November 23, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record and Arthur Moore by electronic means or U.S. Mail on November 23, 2010.

s/Carol A. Pinegar
Deputy Clerk